**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0075n.06
Filed: January 31, 2005

**No. 03-5599**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| CAROL McDANIEL, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) **ON APPEAL FROM THE** |
| v. | ) **UNITED STATES DISTRICT** |
| | ) **COURT FOR THE MIDDLE** |
| TRANSCENDER, LLC, and ANEEL | ) **DISTRICT OF TENNESSEE,** |
| PANDEY, | ) **NASHVILLE DIVISION** |
| | ) |
| Defendants-Appellees. | ) |

**BEFORE:     KEITH and CLAY, Circuit Judges; OBERDORFER, District Judge***

**DAMON J. KEITH, Circuit Judge**. Plaintiff-Appellant Carol McDaniel ("McDaniel")
appeals the district court's grant of a summary judgment in favor of Defendants-Appellees
Transcender, LLC ("Transcender"), and Aneel Pandey ("Pandey") in this employment
discrimination action. McDaniel alleges claims of retaliatory discharge under the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. § 215, and of age discrimination under the Age Discrimination
in Employment Act ("ADEA"), 29 U.S.C. § 626(b). McDaniel also challenges the district court's
refusal to grant her a default judgment or to impose sanctions upon Transcender and Pandey for their
allegedly willful spoliation of relevant evidence. For the reasons set forth below, we reverse the
district court's grant of summary judgment with respect to McDaniel's FLSA and ADEA claims,
and affirm the decision of the district court on the spoliation of evidence claim.

---

* The Honorable Louis F. Oberdorfer, United States District Court for the District of
Columbia, sitting by designation.

## I. <u>BACKGROUND</u>

Founded by Pandey in September 1992, Transcender develops and sells computer software. In 1994, Pandey hired John Rose ("Rose") to serve as Transcender's President. After recruiting Rose, Pandey focused on developing software and managing employees in the development department, while Rose concentrated on supervising employees in the marketing, sales, fulfillment, and administration departments. Two years after Rose joined the company, Transcender hired Ed Acerno ("Acerno") and Richard Zhu ("Zhu") as Chief Technical Officer and Chief Information Officer, respectively.

In 1998, Transcender hired a human resources manager. Only one year after joining the company, the human resources manager, who had been hired at the age of sixty-eight, notified the company, to its surprise, of his intent to retire.

In the fall of 1999, as Transcender began conducting interviews for a new human resources manager, Rose recommended that the company hire McDaniel to fill that position. At the time of her interview, McDaniel was fifty years of age and did not have experience in the computer or software development business. Despite Rose's recommendation to hire McDaniel, Pandey voiced concerns about her being hired. Specifically, Pandey asked Rose how long he thought she would stay with the company, given the facts that (1) this potential new hire was "later in her career," and (2) the previous human resources manager, whom Transcender also hired later in his career, retired from the company shortly after he was hired. Notwithstanding these concerns, Pandey agreed to hire McDaniel, who commenced her work at the company on December 27, 1999.

At the time of McDaniel's hire, Transcender was experiencing difficulty finding enough qualified employees to meet its customers' demands and its growing business needs. McDaniel concedes that "[i]t was made very clear" to her that recruiting new employees for software development was Pandey's chief concern and was to be her "number one priority." Transcender, however, did not provide McDaniel with any specific recruitment guidelines nor with a numerical goal for recruiting new employees. Rather, Pandey told her, "[w]e need to hire a lot of good people, and I'll let you know when to stop."

Pandey, Acerno, and Zhu made the final hiring decisions for the software development department. After McDaniel screened applicants for positions in that department, she would forward those executives the resumes of applicants who she thought were qualified. In turn, they would interview and hire applicants from that pool. During the first month of her employment, Acerno and Zhu took McDaniel to lunch to explain the qualifications that they were seeking in software developers. Pandey, Acerno, and Zhu also discussed recruiting matters continually with McDaniel in "an ongoing dialogue" about Transcender's "recruiting needs," during which they made "attempts to be more specific on what experience [applicants] needed to have and that sort of thing." According to McDaniel, she and Pandey had "a lot of discussions about recruiting" software developers.

In early June 2000, McDaniel completed an employee self-appraisal. In it, she stated that her "recruiting efforts have been viewed by some as inadequate." In particular, McDaniel believed that Pandey held that view because he wanted development positions to be filled more quickly. In

addition, McDaniel gleaned that Pandey, Acerno, and Zhu may have been "unhappy with the candidates [she sent them] because they would not even interview them" in many cases.

As her immediate supervisor, Rose conducted McDaniel's work evaluations throughout her employment at Transcender. In an employee appraisal on July 6, 2000, Rose rated McDaniel as exceptional. He further indicated that McDaniel needed to "[r]aise standards in recruiting - we're looking for best & brightest - people like you." At the time of her evaluation, McDaniel received an increase is her salary, which was approved by Pandey. Despite these positive performance indicators, in the late summer or early fall of 2000, Pandey informed McDaniel that he had decided to absolve her of her development recruiting duties. To this end, the company hired Nancy McCarthy ("McCarthy") in December 2000.

In addition to recruiting employees, McDaniel's other human resources responsibilities included ensuring that the company complied with all employment laws. In early January 2000, shortly after her start date, McDaniel discovered that all of Transcender's employees were classified as exempt under the FLSA overtime provisions. McDaniel explained the FLSA requirements to Rose and advised him that Transcender needed to re-examine its overtime compensation practices. McDaniel later advised Pandey that the potential penalties for a violation of the FLSA included a civil action for damages by employees to recover unpaid overtime wages, attorneys' fees and court costs, criminal and civil penalties, and possibly individual liability by owners of the company.

Rose directed McDaniel to conduct an investigation and re-classify employees where appropriate. He also instructed her to discuss the project with Jamie Heartfield ("Heartfield"), who served as outside legal counsel for Transcender. On the basis of written employee job descriptions,

McDaniel classified Transcender's employees as either exempt or non-exempt under the FLSA overtime provisions. After completing the project, McDaniel then transmitted her proposed classifications and a draft memorandum to Heartfield, who edited the memorandum but expressed no legal opinion on the classifications.

In October 2000, Rose informed McDaniel that the company wanted to implement her proposed classifications by November 1, 2000. On November 1, McDaniel held a meeting with all of the company's managers to explain the proposed classifications. Acerno complained about the re-classification of most of his software developers, insisting that most of the employees labeled "technical editors," whom McDaniel proposed to classify as non-exempt, should have been classified as exempt because they were actually performing the duties of software content developers. In light of those concerns, Acerno and Zhu changed the job titles of all but one of the technical editors to content developer.

McDaniel also distributed a memorandum to all employees that specified whether their various positions were exempt or non-exempt. Soon thereafter, she received several complaints from employees who were previously classified as exempt but who now were classified as non-exempt. These employees were offended by their perception that Transcender viewed their work as less important than work done by exempt employees. McDaniel later summarized the meeting as hostile and complained to Rose.

Given the differences of opinion that resulted from the reclassifications announced on November 1, 2000, Charles Arnold ("Arnold"), a technical editor and content developer for Transcender who also possesses a law license, interviewed certain employees and submitted a

memorandum to Pandey concerning the classification of those employees. Arnold's memorandum suggested that McDaniel's classifications were erroneous. Pandey provided McDaniel with a copy of Arnold's memorandum on November 15, 2000, and asked her to respond to the proposed revisions of her classifications. McDaniel, in turn, forwarded the memorandum to Heartfield for a legal opinion about the accuracy of the proposed revisions. Heartfield opined that the employees should be classified as exempt if Arnold's description of their duties was correct, but he refused to render a legal opinion without first conducting his own investigation of the employees's duties. Following additional discussions with McDaniel and Heartfield, Pandey concluded that Arnold's suggested revisions were correct.[1]

Transcender asserts that Pandey and Acerno discussed employee complaints about McDaniel in relation to the FLSA classifications on several occasions in November and December 2000. By the end of December, Pandey consider firing McDaniel and asked Acerno to summarize any concerns about McDaniel's work or demeanor. In response, on January 2, 2001, Acerno submitted a memorandum, which included copies of written complaints from software development employees. In the memorandum, Acerno stated his belief that McDaniel (1) had embarrassed those employees by reclassifying them, (2) was defensive and condescending when confronted with complaints by them, and (3) had done "irrevocable damage" to her relationship with them. Acerno concluded the memorandum by stating, "I do not think she is a good fit to lead and cultivate

---

[1] During the same period, Pandey sold Transcender to Information Holdings. Pandey remained CEO and President. At Information Holding's insistence, however, Rose left the company. Thus Pandey became McDaniel's immediate supervisor. Besides Rose, Information Holding retained all of Transcender's employees.

Transcender's HR department for the future." McDaniel contests the veracity of this memorandum because Acerno has admitted that he does not recall preparing or submitting this document.

On January 5, 2001, Pandey and Zhu met with McDaniel. At that meeting, Pandey told McDaniel that she was being terminated as a result of her inefficiency in recruiting, mistakes in the FLSA employee classifications, and problems with software development employees.

McDaniel filed this action on May 25, 2001, alleging retaliatory discharge under § 215 of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* Transcender moved for summary judgment on the FLSA claim on the basis that McDaniel did not engage in activity protected under § 215(a)(3) of the Act. In response, McDaniel asserted that she engaged in protected activity when she opposed Transcender's assertion that the five employees in the development department were exempt from overtime under the FLSA. McDaniel moved to amend her complaint to add (1) other defendants, (2) a sex discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, and (3) an age discrimination claim under the ADEA, 29 U.S.C. § 626(b). On March 21, 2002, the district court denied Transcender's motion for summary judgment and granted McDaniel's motion to amend the complaint. Following discovery, Transcender filed a motion for summary judgment on the Title VII and ADEA claims and a renewed motion on the FLSA claims. The district court granted Transcender's motion for summary judgment on all three claims. McDaniel timely appealed the district court's grant of summary judgment on the ADEA and FLSA claims.

## II. ANALYSIS

A.      Standard of Review

This court conducts a de novo review of a district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering such a motion, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To defeat a properly supported motion for summary judgment, an adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

B.      FLSA Claim

McDaniel alleged in her complaint that she was fired in retaliation for her efforts to have certain software development employees classified as non-exempt. The FLSA makes it unlawful for an employer to fire an employee who, among other things, engages in any of the following protected acts: (1) filing a complaint against employer; (2) instituting a procedure against an employer under the FLSA; and (3) testifying in any proceeding brought under the FLSA. 29 U.S.C. § 215(a)(3). This court has previously held that to satisfy the "complaint" requirement, the plaintiff need not file a formal complaint with the Equal Employment Opportunity Commission; the lodging of a complaint with the employer is sufficient. *EEOC v. Romeo Community Schools*, 976 F.2d 985, 989 (6th Cir. 1992). The district court found that by undertaking to classify Transcender's employees under the FLSA and then disputing the classifications determined by Arnold and Pandey, McDaniel had engaged in protected activity under the FLSA.

In the absence of direct evidence that Transcender retaliated against McDaniel, the appropriate framework for analyzing McDaniel's claim of unlawful retaliation under the FLSA is the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (applying the burden-shifting test to a FLSA retaliation claim). Thus, McDaniel must first make out a prima facie case of retaliatory discharge by Transcender. Then, if Transcender advances legitimate reasons for firing her, McDaniel must show that the company's proffered reasons are pretextual. To establish a prima facie case of reprisal in violation of the FLSA, McDaniel must show not only that she engaged in protected activity and that Transcender subsequently engaged in an adverse action, which she has done, but also a causal connection between her action and the firing. *See Williams v. General Motors Corp.*, 187 F.3d 553, 568 (6th Cir. 1999) (analyzing retaliation claim under Title VII). Where a plaintiff makes that showing and the employer then proffers a legitimate reason for firing her, the plaintiff then must "show that, but for the defendants' animus toward [her]," the firing would not have occurred. *Kearnery v. Town of Wareham*, 316 F.3d 18, 23 (1st Cir. 2002).

McDaniel argues that the district court erred when it ruled that she had failed to produce evidence that she was terminated in violation of the FLSA. The district court ruled that McDaniel had not established a causal connection between her FLSA activity and her firing, and that Transcender had presented legitimate business reasons to support its decision to discharge her. McDaniel's argument is based on the temporal proximity between her protected activity and her firing. Transcender's firing of McDaniel closely followed her FLSA activity, giving the impression of retaliation. *See Moon v. Transp. Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir.1987) (finding that the

fact that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation).

While temporal proximity alone is insufficient to show retaliation, *see Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) (explaining that temporal proximity alone generally will not support an inference of discrimination if there is no other compelling evidence), McDaniel has adduced other evidence in support of her claim of retaliation. Pandey obtained the approved job descriptions from McDaniel on November 13, 2000. Two days later, Pandey received conflicting information from Arnold. Pandey then transmitted Arnold's memorandum to McDaniel, seeking a response from her. Shortly thereafter, McDaniel advised Pandey that she disagreed with Arnold's representations in part because they were based upon modified job descriptions that she considered to be exaggerated. On November 28, 2000, Pandey sided with Arnold's suggested revisions.

Twenty-two days later, on the morning of January 5, 2001, Pandey terminated McDaniel. Pandey then instructed McCarthy, McDaniel's eventual replacement, to take steps to change five employees' statuses back to exempt, which was completed in mid-January, within days of McDaniel's termination. Upon the consideration of all of the above facts, a jury could reasonably infer that McDaniel's failure to implement the change in the FLSA classifications was the reason for her termination. Thus, the district court erred in finding the absence of a genuine issue of material fact.

McDaniel also argues that the district court erred when it ruled that she failed to show that Transcender's articulated nondiscriminatory reason for firing her was pretext for retaliation. In opposition to McDaniel's FLSA claim, Transcender contended that she was terminated primarily

as a result of her erroneous classification of employees. It is undisputed that McDaniel believed that her FLSA classifications were correct. McDaniel presented evidence that she based her decision to classify the five employees as non-exempt on the employee job descriptions that had been approved by their supervisors and interviews conducted by her assistant. Thereafter, Arnold modified the job descriptions to justify the positions as exempt. Viewing this evidence in the light most favorable to McDaniel, a reasonable jury could conclude that Transcender's purported justification for firing McDaniel was mere pretext because the company modified employee job descriptions in an apparent effort to change those employees FLSA statuses from non-exempt to exempt. Inasmuch as a genuine issue of material fact remains as to whether Transcender's reason for firing McDaniel was mere pretext, the district court erred in granting summary judgment for Transcender.

C.      ADEA Claim

In her complaint, McDaniel also alleges that Transcender fired her because of her age, in violation of the ADEA. The ADEA makes it unlawful for an employer to fire or otherwise discriminate against a worker with respect to compensation or conditions of employment on the basis of age. 29 U.S.C. § 623(a)(1). The analytical framework used in Title VII cases applies to claims of age discrimination under the ADEA. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). To make out a prima facie case of discriminatory discharge in the absence of direct evidence of discriminatory intent based on age, McDaniel must prove that: (1) she was a member of the protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class. *Mitchell*, 964 F.2d at 582 (citing *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450

U.S. 248, 256 (1981)).  If McDaniel satisfies the prima facie burden, the burden of production then

shifts to Transcender, who must articulate a legitimate, nondiscriminatory reason for her termination.

*Mitchell*, 964 F.2d at 584, n. 6.  If Transcender meets that burden, then the burden shifts back to

McDaniel, who must show that the nondiscriminatory rationale proffered by Transcender is a mere

pretext for intentional discrimination based on age.  *Id.*  McDaniel must prove "that the asserted

reasons have no basis in fact, that the reasons did not motivate the discharge, or, if they were factors

in the decision, that they were jointly insufficient to motivate the discharge."  *Burns v. City of*

*Columbus*, 91 F.3d 836, 844 (6th Cir. 1996).

The district court assumed that McDaniel met the prima facie case and went on to consider

Transcender's reasons for firing McDaniel.  Transcender contended that it fired McDaniel for her

failure to recruit an adequate number of new software developers and her handling of the FLSA

employee classifications.  While these proffered reasons do have some basis in fact, other evidence

exists to establish that the proffered reasons were not the motivation for McDaniel's discharge. One

of the reasons that Transcender provides for McDaniel's termination is that she failed to recruit an

"adequate number of software developers."  Transcender, however, never provided a definitive

number of employees for McDaniel to recruit.  Pandey only informed her that Transcender needed

to hire "a lot" of people.  To support her assertion that this was not a reason that motivated her

discharge, McDaniel says that she was never provided with performance standards, but rather the

recruiting methods that she used, which included screening resumés, were consistent with what

Pandey specifically requested.  Moreover, McDaniel received a high rating of "exceptional" from

her immediate supervisor during her employment evaluation, and Pandey even authorized her pay increase.

In further support of McDaniel's ADEA claim, the record indicates that Pandey expressed reservations about hiring McDaniel because of her age. The record suggests that Pandey was upset about the short tenure and early departure of McDaniel's predecessor, who had joined Transcender at the age of sixty-eight. Thus, at the time of McDaniel's hire, Pandey specifically inquired of Rose as to how long he thought she would stay with the company, given the fact that, like her predecessor, McDaniel was also "later in her career."

A jury could infer that recruitment was not a priority at the time that McDaniel was fired. Thus, a question of fact exist concerning whether McDaniel actually fulfilled her recruitment responsibilities. A jury could reasonably conclude that Pandey held reservations about McDaniel throughout her term of employment with the company on the basis of her age. Inasmuch as her failure to recruit was given as a legitimate, nondiscriminatory reason for her firing, and a question of fact exists on that issue, the district court erred in granting summary judgment on McDaniel's ADEA claim.

D.    Destruction of Evidence

We review the district court's decision to exclude evidence of spoliation for abuse of discretion. *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003). Spoliation is the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for the destruction. *Id.* The rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law; in this case, the law of Tennessee. *Nationwide Mut. Fire Ins. Co.*

*v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999). Under Tennessee law, "it is a general rule that the intentional spoliation or destruction of evidence relevant to a case raises . . . an inference, that the evidence would have been unfavorable to the cause of the spoliator." *Thurman-Bryant Elec. Supply Co., Inc. et al. v. Unisys Corp., Inc. et al.*, No. 03A01-CV00152, 1991 WL 222256 (Tenn. Ct. App. March 16, 1992) (citation omitted). This inference arises "only where the spoliation . . . was intentional, and indicates fraud and a desire to suppress the truth. . . . Furthermore, any presumption that may arise from the spoliation . . . is not conclusive, but rather is rebuttable." *Id.*

In this case, McDaniel sought a default judgment, or, in the alternative, sanctions, against Transcender for willfully destroying relevant evidence. McDaniel served Transcender with a request for inspection and copying of its computers pursuant to Federal Rule of Civil Procedure 34. McDaniel alleges that Transcender destroyed the external creation date of a memorandum, which the company asserts was prepared by Acerno on January 2, 2001. This document outlined many of the reasons for the company's dissatisfaction with McDaniel's work. In her appeal, McDaniel argues that Acerno has testified, among other things, that he (1) did not believe she should have been terminated, (2) never recommended her termination, and (3) did not recall preparing the memorandum, which ostensibly supported her termination.

Upon our review of the record in this case, we conclude that the district court did not abuse its discretion in denying McDaniel a default judgment and sanctions. Assuming that the allegedly spoiled evidence would have shown, as McDaniel claims, that Acerno did not write the contested memorandum, that information would not have established a sufficient evidentiary basis upon which

we could determine that the district court's denial of a default judgment or sanctions constituted an abuse of its discretion.

### III. CONCLUSION

For the foregoing reasons, the court REVERSES the district court's grant of summary judgment in favor of Transcender on McDaniel's ADEA and FLSA claims and REMANDS the case to the district court for proceedings consistent with this opinion. The court AFFIRMS the district court's denial of default judgment or sanctions against Transcender.