NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0207n.06
Filed: April 22, 2008

No. 05-6079

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ROSIA L. SCOTT, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| EASTMAN CHEMICAL COMPANY, | ) | O P I N I O N |
| | ) | |
| *Defendant-Appellee*. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: BOGGS, Chief Judge; MARTIN, Circuit Judge; and OLIVER, District Judge.[*]

**OLIVER, JR., District Judge:** Plaintiff-Appellant Rosia L. Scott ("Scott" or "Plaintiff")

appeals the order of the district court granting Defendant-Appellee Eastman Chemical Company's

("Eastman" or "Defendant") Motion for Summary Judgment on her employment discrimination

claims. Scott alleges: (1) that she was denied promotions based on sex and in retaliation for

engaging in protected activity occurring from November, 1996, through 2005;[1] and (2) that she was

subjected to a sexually hostile environment from 1976 to 2005. The district court dismissed Scott's

hostile environment claim and her post-Equal Employment Opportunity Commission ("EEOC")

---

[*]The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

[1]Scott conceded before the district court that her claims for discrete acts of disparate treatment arising prior to November 26, 1996, are time-barred.

charge failure to promote claims other than to Team Manager. The district court also dismissed Scott's retaliation claims, other than those associated with the filing of her EEOC charge, for failure to exhaust administrative remedies. The court granted summary judgment to Eastman on Scott's claims alleging failure to promote to Team Manager in 1997, 1998, and 1999, because she did not offer evidence to rebut Eastman's articulated, non-discriminatory reason that it selected the most qualified candidates for the jobs. The court also granted summary judgment to Defendant on Scott's retaliation claims based on the filing of her EEOC charge, for failure to establish a prima facie case, finding that she produced no evidence that the decisionmakers knew of her protected activity. Additionally, Scott's Motion to Amend her Complaint to assert a disparate impact claim and pursue a class action was denied by the Magistrate Judge. For the reasons that follow, we **AFFIRM** the district court's decision in part and **REVERSE** it in part.

## I.

### A. Background

Scott's employer, Eastman, manufactures chemicals, fibers, and plastics in Tennessee. Scott has worked for Eastman since August of 1976, when she began as a General Laborer. In 1977, she entered Eastman's apprenticeship program, which she completed in June, 1981. During the course of this lawsuit, Scott worked as a pipe fitter. Scott maintains that throughout her career at Eastman, she sought, but never received, a permanent promotion, that her male co-workers were promoted to jobs for which she was qualified, and that she experienced workplace hostility based on her sex.

In 1995, Eastman initiated the Team Manager Development System ("TMDS") for selecting "Team Managers," developed with the assistance of an outside consultant. Through TMDS,

2

interested candidates were evaluated by the entire management team within each division, which would make its own selections, based on a variety of criteria. Those interested in being a Team Manager had to meet minimum eligibility criteria and pass a written Paper and Pencil Test ("PPT"), among other things. When no women were selected as Team Managers in the two divisions to which Scott applied during the 1996/97 cycle, she filed a charge of discrimination with the EEOC on September 22, 1997, against Eastman. (Charge of Discrimination, Joint Appendix ("J.A.") 409.) On January 29, 2003, the EEOC issued a determination letter, finding that Scott "was not promoted based on her sex (female), as alleged." (EEOC Determination Letter, J.A. 466.)

Scott's failure to promote claims involve Team Manager jobs and Special Selection jobs in the Polymers Division and Centralized Maintenance & Services Division ("CM&S"). Scott describes Special Selection as a policy and practice for promoting employees to jobs, other than Team Manager jobs, that does not entail a uniform method of promotion. Scott states that jobs filled by Special Selection are rarely posted, employees do not generally know when Special Selection opportunities are available, what criteria are used, if any, or which employees are being considered, or who makes the decision. Thus, an employee may never find out that a comparable employee was promoted. Scott identifies three Special Selection promotional job opportunities occurring in 1997, for which she maintains that she was interested in and qualified for, but not selected.

### B. Procedural History

On August 27, 2003, Scott filed her Complaint, alleging sex discrimination and retaliation under Title VII. On February 27, 2004, the district court issued a Scheduling Order setting a May 28, 2004 deadline, for amending pleadings. On February 8, 2005, after the expiration of the deadline for amending the pleadings, Scott filed a Motion to Stay all remaining deadlines, seeking

3

time to file a Motion to Amend. The Motion was referred to a Magistrate Judge, who denied it on February 16, 2005. Scott filed no objections to that Order. Eastman filed a Motion for Summary Judgment on February 11, 2005. Scott filed her Response in Opposition to Defendant's Motion for Summary Judgment on March 28, 2005. Thereafter, Scott filed a Motion for Leave to File a Supplemental Brief Opposing Summary Judgment on May 1, 2005. The district court denied that Motion on May 2, 2005. On May 6, 2005, Scott filed a Motion to Amend her Complaint. On June 3, 2005, the district court granted Eastman's Motion for Summary Judgment and also denied Scott's Motion to Amend her Complaint as moot. Scott filed her Notice of Appeal on July 1, 2005.

## II.

The issues presented on appeal are whether the district court erred in: (1) dismissing Scott's hostile environment claim, her post-EEOC charge failure to promote claims other than to Team Manager, and her retaliation claims other than those associated with the filing of her EEOC charge; (2) granting summary judgment to Eastman on Scott's 1997, 1998, and 1999, failure to promote to Team Manager claims; (3) granting summary judgment to Eastman on Scott's retaliation claim arising out of the EEOC charge; and (4) denying Scott's Motion to Amend her Complaint.

This court exercises *de novo* review of a district court's decision granting summary judgment, using the same standard under Rule 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc) (citations omitted). In so doing, the court must consider the record as it stood before the district court at the time of its ruling. Generally, this court should not consider arguments not raised by an appellant below. *Enertech Elec. v. Mahoning County*, 85 F.3d 257, 261 (6th Cir. 1996) (citation omitted). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter

4

of law." Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, we view the factual evidence and draw all reasonable inferences in favor of the non-moving party.  *Mehra*, 186 F. 3d at 689 (citing *Nat'l Enters. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997)).

This court also exercises *de novo* review of a district court's decision to dismiss for lack of subject matter jurisdiction.  *Dixon v. Ashcroft*, 392 F.3d 212, 216 (6th Cir. 2004) (citing *Joelson v. United States*, 86 F.3d 1413, 1416 (6th Cir. 1996)).  Finally, decisions on motions to amend are reviewed for an abuse of discretion.  *Ausel v. Unisys Corp.*, 1997 U.S. App. LEXIS 32771, at *6 (6th Cir. Nov. 13, 1997) (citing *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 982 (6th Cir. 1991).

## III.

## A. Exhaustion of Administrative Remedies

Under Title VII of the Civil Rights Act of 1964, it is an unlawful employment practice for an employer to discriminate against an employee based on sex, 42 U.S.C. §2000e-2; or because an employee has opposed unlawful discrimination; or because an employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. §2000e-3(a).  Title VII requires that a charge of discrimination be timely filed with the EEOC.  42 U.S.C.§ 2000e-5(e)(1).

As a prerequisite to bringing suit under Title VII, a claimant must exhaust his or her administrative remedies.  *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002) (citing *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001)).  The policy or purpose of the exhaustion requirement "is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (citation omitted).

5

However, as this court recently stated in *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006), the requirement "is not meant to be overly rigid, nor should it 'result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading.'" *Id.* (quoting *EEOC v. McCall Printing Co.*, 633 F.2d 1232, 1235 (6th Cir. 1980)). Consequently, "the EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Id.* (quoting *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992)).

Scott argues that the district court erred in dismissing her hostile environment claim, her post-EEOC charge failure to promote claims other than to Team Manager, and retaliation claims other than those associated with the filing of her EEOC charge, for failure to exhaust her administrative remedies. The general rule is that a plaintiff may file suit only in regard to the claims asserted in the EEOC charge and those within the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination. *See Dixon*, 392 F.3d at 217. Under this "expected scope of investigation" test, a plaintiff may fully exhaust her administrative remedies on a claim even if the claim was not actually investigated by the EEOC, or specifically stated in the charge. *Id.* Moreover, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Weigel*, 302 F.3d at 380 (quoting *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)). Plaintiffs are not to be penalized if the EEOC investigation should have been larger in scope. *Dixon*, 392 F.3d at 219.

6

In this case, the district court held that:

> Plaintiff has simply not set forth any legitimate basis to believe that sufficient facts were alleged to prompt the EEOC to investigate claims other than her failure to be promoted to Team Manager in 1997, 1998, and 1999, or retaliation for the filing of her charge.

*Scott v. Eastman Chem. Co.*, 2005 WL 1325014, at *3 (E.D. Tenn. June 3, 2005).

The district court then dismissed Scott's hostile environment claim, her other post-EEOC charge failure to promote claims other than to Team Manager, and her retaliation claims other than those associated with the filing of her EEOC charge. The district court concluded that "the primary focus of [Scott's] charge . . . was her failure to be promoted to team manager in 1997." *Id.* at *2. However, the district court judge found that Scott's claim for failure to promote to Team Manager in 1998 and 1999 were within the scope of her EEOC charge, as well as her retaliation claim growing out of the EEOC charge. Scott argues that the district court's determination of the "primary focus" of her EEOC charge was in error, as the correct standard under applicable law should have been the "scope of investigation" test.

### 1. Dismissal of Scott's Claim for Failure to Promote by
### Special Selection to Welding Inspector in 1997

In dismissing all of Scott's claims for failure to exhaust administrative remedies "other than her claim that she was denied Team Manager positions in 1997, 1998, and 1999" and Scott's retaliation claim "for the filing of a charge with the EEOC," the district court dismissed Scott's claim for failure to promote by Special Selection to Welding Inspector in 1997. In Scott's EEOC charge, she describes the 1997 Welding Inspector promotion for which she was not selected as follows:

> In June, 1997, a welding inspector job was filled with a male employee with less experience, qualifications, and service. This position was not posted and employees were not canvassed for interest in the position. Other male employees are given

7

special assignment and special training to groom them for promotional opportunities and women are not given the same benefits or opportunities.

(Charge of Discrimination, J.A. 414.) Eastman responded to the EEOC charge with information about the Welding Inspector position that was given to Michael Gass ("Gass") as well as about the Special Selection process. On appeal, Eastman agrees that the 1997 Welding Inspector position was identified in the EEOC charge. Because Scott's claim for failure to promote by Special Selection to Welding Inspector in 1997 was identified in her EEOC charge, it was clearly within the scope of the EEOC's investigation. Therefore, the district court erred in dismissing this claim for failure to exhaust administrative remedies. Accordingly, we conclude that the case should be reversed and remanded back to the district court for determination on the merits.

The dissent argues that, although the district court erred in dismissing this claim for failure to exhaust administrative remedies, summary judgment should be granted in Eastman's favor on the ground that, as a matter of law, Gass was better qualified than Scott because he had more relevant education and more experience. Thus, the dissent concludes that Eastman has articulated a legitimate non-discriminatory reason for selecting Gass over Scott, and that Scott has not presented evidence that this reason is pretextual. However, because of the confused state of the record before this court, as discussed below, we conclude that it would be inappropriate for this court to grant summary judgment.

Scott's EEOC charge describes a position that was not posted and for which employees were not canvassed. She also states that she had more experience than the person selected. In response to the EEOC charge, Eastman states:

Ms. Scott was considered during the final selection for the job assignment, along with 20 other candidates, but she and 19 of the candidates were not selected for the

job. Ten candidates were ranked higher than Ms. Scott, and ten candidates were ranked the same as Ms. Scott. Nine of the male candidates who were ranked higher than Ms. Scott were not selected as the most qualified candidate for the job assignment.

(J.A. 623.) In its Motion for Summary Judgment at the trial level, Eastman identified the selected employee as Gass, and explained that he had a longer length of service and more relevant education. (Gass had a two-year degree in Welding Technology and had been performing the job in an "acting" capacity for several months, whereas Scott had a Welder Inspector's certificate.) In Scott's Opposition to Summary Judgment, she did not directly respond to Eastman's identification of Gass, nor did she discuss the Welding Inspector position at all. However, in her response to Defendant's Separate Statement of Undisputed Facts, which the district court required her to file in conjunction with its consideration of Defendant's Summary Judgment Motion, Scott did not dispute that Gass was selected in June, 1997, but she also stated that Jeff Estepp ("Estepp") was selected "in approximately 1997-98; however, no selection form was provided." (J.A. 1746.) In addition, in response to an interrogatory asking her to list every male employee who was treated more favorably than her, Scott identified Estepp as being appointed to Welding Inspector with no canvass despite Scott's longer service, yet she did not identify Gass anywhere in this long list of names and complaints. Consequently, it appears that Scott's EEOC charge may have been referring to Estepp rather than Gass.

Eastman has not moved for summary judgment regarding Estepp. As the district court did not address any claim regarding Estepp, and as the record raises sufficient concerns regarding whether Gass is the person whom Scott references in her EEOC charge, we hereby **REVERSE** the

9

district court's decision and **REMAND** Scott's claim for failure to promote by Special Selection to Welding Inspector in 1997 back to the district court for consideration on the merits.

### 2. Dismissal of Scott's Other Post-EEOC Charge Failure to Promote by Special Selection Claims

Before the district court, and on appeal, Scott divided her post-EEOC charge failure to promote claims into Team Manager promotions and Special Selection promotions. The district court did not exercise jurisdiction over Scott's post-EEOC charge failure to promote by Special Selection claims and dismissed them for failure to exhaust administrative remedies. The district court further concluded that Scott did exhaust her remedies on the post-EEOC charge Team Manager promotions arising in 1998 and 1999, even though Scott did not file any additional EEOC charges regarding these claims.

Scott argues that, like the post-EEOC charge Team Manager promotions in 1998 and 1999, over which the district court did exercise jurisdiction, the post-EEOC charge Special Selection promotions are reasonably related to the pre-EEOC charge Special Selection promotion described in Scott's EEOC charge and, thus, are within the scope of the EEOC investigation. Scott maintains that the fact that the EEOC more thoroughly investigated the Team Manager promotions is not determinative of the jurisdictional issue regarding her Special Selection claims. *See Dixon*, 392 F.3d at 217-19.

In applying the expected scope of investigation test to this case, we conclude that the factual allegations in Scott's EEOC charge were not sufficient to put the EEOC on notice of Scott's post-EEOC charge failure to promote by Special Selection claims. Indeed, Scott did not use the term Special Selection in describing her claim. The only reference in Scott's EEOC charge to what Scott

now describes as a Special Selection promotion is the 1997 Welding Inspector position. This was given as an example of promotions that occurred at Eastman without a process. It is not reasonable to expect that the EEOC would investigate other promotional opportunities that were not put in front of them. *See Cedar v. Premier Indus. Corp.*, 869 F.2d 1489 *9 (6th Cir. 1989) (holding that just because subsequent alleged acts of discrimination occurred during EEOC's investigation "is no reason to assume the agency would discover this charge"). Therefore, we **AFFIRM** the district court's dismissal of Scott's other post-EEOC charge failure to promote by Special Selection claims, as they were not sufficiently described in her EEOC charge, were not investigated by the EEOC, and were not reasonably within the expected scope of the EEOC's investigation.

### 3. Dismissal of Scott's Post-EEOC Charge Retaliation Claims

In dismissing "all other claims," the district court dismissed Scott's post-EEOC charge retaliation claim that did not arise from the EEOC charge. Scott maintains that the write-up she received in 2001 was in response to her protected activity, an internal complaint to her Division Head, and that in her EEOC charge she describes similar incidents where she was given write-ups for complaining about discrimination. Scott also argues that because the EEOC was investigating the Division at the time, a jury could find that the write-up she received immediately after this meeting was in retaliation for her 2001 complaint *and* her 1997 EEOC charge. Therefore, Scott maintains that her retaliation claim is exhausted because retaliation is foreseeable to defendants and reasonably expected to grow out of a charge.

11

Courts have held that retaliation growing out of the EEOC charge is reasonably foreseeable and therefore a plaintiff is not required to file yet another EEOC charge.[2] However, Scott's post-EEOC charge retaliation claim stems from an incident occurring in 2001, four years after she filed her EEOC charge. Applying the expected scope of the investigation test, it is not reasonable to conclude that the EEOC would have investigated Scott's retaliation claim based on the write-up she received in 2001. Therefore, we **AFFIRM** the district court's dismissal of this claim, as it was not within the scope of the EEOC investigation, and thus Scott failed to exhaust her administrative remedies on this claim.[3]

### 4. Dismissal of Scott's Hostile Environment Claim

The district court dismissed Scott's hostile environment claim because it determined that it was not the "focus" of her EEOC charge and because Scott did not allege sufficient facts to prompt the EEOC to investigate the claim. The plain language of Scott's EEOC charge does not allege that

---

[2]Courts have held that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge[] [because] the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546-47 (6th Cir. 1991) (quoting *Gupta v. E. Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981)). This is because "retaliation claims, by definition, arise after the filing of the EEOC charge, [and thus] this rule promotes efficiency by requiring only one filing." *Id.*

[3]Scott argues that all of her post-EEOC charge claims are based on retaliation, as well as sex discrimination (therefore there is more than one post-EEOC charge retaliation claim), and that a jury could conclude that the motivating factor behind any alleged adverse action by Eastman (*i.e.*, post-EEOC charge failures to promote) was either based on sex discrimination or retaliation for her complaints of sex discrimination. To the extent Scott is arguing "retaliatory failure to promote" based on her protected activity other than the filing of the EEOC charge in 1997, those claims would not be within the expected scope of the EEOC charge and, thus, are unexhausted for the same reasons that her retaliation claim based on her 2001 internal complaint was not within the expected scope of her EEOC charge. The district court determined that any post-EEOC charge retaliation claims stemming from anything other than the EEOC charge itself were unexhausted.

12

she was subjected to a hostile environment. Though the captions outlining her EEOC charge are not dispositive, they are some evidence of which claims Scott was seeking to pursue before the EEOC. Scott argues that her hostile environment claim was within the scope of her EEOC charge because she alleged instances of harassment and inappropriate conduct. However, there is no evidence that the EEOC viewed Scott's charge, or investigated her charge, as alleging a hostile environment claim. Rather, her description of inappropriate conduct appears to be an attempt to provide background, or context, for the claims that she is presenting. Scott's EEOC charge contains a long description of complaints covering her entire twenty-one years of employment at Eastman, but the incidents of alleged sexual harassment that Scott described do not span the entire period of her employment. Indeed, even if the events described are viewed as evidence of a potential hostile environment claim, they are spread out in such a matter that the last such incidents described would not be within the statute of limitations.

For these reasons, we **AFFIRM** the district court's conclusion that Scott failed to exhaust her hostile environment claim, as she offered no evidence that the EEOC actually investigated this claim or that such claims could reasonably be expected to grow out of the charge.

### B. Scott's Failure to Promote Claims Decided on the Merits

#### 1. *McDonnell Douglas* Framework

The district court exercised jurisdiction over Scott's claims that she was not promoted to Team Manager in 1997, 1998, and 1999, and granted summary judgment in favor of Defendant in respect to each such claim. There was no dispute that Scott established a prima facie case of gender discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Once a plaintiff has proved a prima facie case, the burden then shifts to the employer to articulate some legitimate,

13

non-discriminatory reason for plaintiff's rejection. *Id.* at 802. Eastman's articulated reason for not promoting Scott to Team Manager each year from 1997 to 1999 was that she did not rank high enough in the TMDS selection process and thus, other candidates were more qualified. Once an employer has articulated a legitimate non-discriminatory reason, the burden shifts to the plaintiff to demonstrate that the defendant's explanation is a pretext for discrimination. To demonstrate pretext, a plaintiff is required to show either: "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the decision; or (3) that they were insufficient to motivate the employment decision." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 184 (6th Cir. 2004) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

### 2. Eastman's Articulated, Non-Discriminatory Reason

Scott argues that the district court erred in granting Eastman summary judgment because Eastman's non-discriminatory explanation lacks clarity and specificity as required by *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981). *Burdine* requires the defendant to articulate a legitimate, non-discriminatory reason for its actions "which would allow the trier of fact to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* at 257. In order to sustain his burden of production and rebut the presumption, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 96 (6th Cir. 1982) (quoting *Burdine*, 450 U.S. at 255). Such evidence must be "clear and reasonably specific," and it must be of such a character as to "justify a judgment for the defendant." *Id.* (quoting *Burdine*, 450 U.S. at 255).

14

The district court found that Eastman "set forth a legitimate non-discriminatory reason for its failure to promote the plaintiff to Team Manager, that is, that those selected for the Team Manager position were better qualified than the plaintiff." *Scott*, 2005 WL 1325014, at \*3. There is no further analysis by the district court of Eastman's articulated, non-discriminatory reason for not promoting Scott.

Scott argues that Eastman did not offer a clear, reasonably specific, or legally sufficient explanation as required by *Burdine* because the numeric values on the spreadsheets provide no factual basis to explain why management rated Scott lower than male selectees on certain subjective criteria. The rating assignment on the spreadsheets consist of a 7-9 for outstanding, 4-6 for fully acceptable, and 1-3 for less than acceptable. (*See* Performance and Capability Assessment, J.A. 1245, 1247.) In support of her argument, Scott cites *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313 (3d Cir. 2000). In *Goosby*, the Third Circuit reversed summary judgment for the employer where the employer purported to rely on numerical "Matrix" scores assigned to subjective criteria. *Id.* at 320-21. The Third Circuit stated, "cloaking such criteria with an appearance of objectivity does not immunize an employment decision from a claim of discrimination." *Id.* at 321.

Eastman argues that Scott did not raise this argument below and thus waived it. However, Scott did argue that the spreadsheet scores "demonstrate excessive subjectivity." (J.A. 751-52.) The district court's opinion stated that, "plaintiff attempts to equate subjectivity in the selection process with pretext. However, the plaintiff cites no authority for this proposition, nor is such authority likely to exist." *Scott*, 2005 WL 1325014, at \*4. The court's opinion that no authority likely exists regarding the relevance of subjective criteria to proving pretext is an issue of law requiring no new

15

factual determination and may be addressed on appeal. *Logan v. Denny's Inc.*, 259 F.3d 558, 570 (6th Cir. 2001).

This circuit and other circuits have recognized the problems with subjective evaluations under Title VII. In *Rowe*, the court summarized as follows:

> This Court has previously noted the problems inherent in selection procedures which rely solely upon . . . subjective evaluations . . . . *See, e.g., Senter v. General Motors Corp.*, 532 F.2d 511, 528-29 (6th Cir.), *cert. denied*, 429 U.S. 870, 50 L. Ed. 2d 150, 97 S. Ct. 182 (1976); *Shack v. Southworth*, 521 F.2d 51, 55-56 (6th Cir. 1975). While such procedures are not *per se* violative of Title VII, *Hester v. Southern Railway Co.*, 497 F.2d 1374, 1381 (5th Cir. 1974), they do provide a ready mechanism for discrimination, permitting racial prejudice to affect and often control promotion and hiring decisions. [Citations omitted.] While we recognize that, in some circumstances, employment decisions may be made on the basis of such subjective criteria, any procedure employing such subjective evaluations will be carefully scrutinized in order to prevent abuse. *Jenkins v. Caddo-Bossier Association for Retarded Children*, 570 F.2d 1227, 1229 (5th Cir. 1978).

*Rowe*, 690 F.2d at 93.

Moreover, in *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1167 (6th Cir. 1996), this court stated that "[an] employment decision is subject to 'particularly close scrutiny' when it was subjective and decision makers were not members of [the] minority group." *Id.* (discussing *Bruhwiler v. Univ. of Tenn.*, 859 F.2d 419, 421 (6th Cir. 1988)). Scott argues the district court was required to assess the legitimacy of Eastman's subjective reasons for rejecting Scott with "particularly close scrutiny" as all seventeen of the decisionmakers involved in selecting Team Managers in Polymers and CM&S Divisions were men who selected only men in 1997, before Scott filed her EEOC charge.

Eastman states that the "evaluators" were not all male and, thus, close scrutiny is inapplicable. (Appellee Br. 42.) However, it is undisputed that all *decisionmakers* involved in "calibrating" scores, selecting finalists, and scoring and selecting Team Managers were male. (J.A.

16

845, 878.) Eastman also argues that because TMDS contained both subjective and objective components, "particularly close scrutiny" is inapplicable, citing *Milligan-Jensen v. Mich. Tech. Univ.*, 767 F. Supp. 1403, 1411 (W.D. Mich. 1991) (reversed on other grounds).

> The use of subjective criteria is permissible in the selection of candidates for employment. Employers, not the courts, ought to be able to choose which employees to hire. Rather, the ultimate issue in each case is whether the employer's subjective criteria were used to disguise discriminatory action.

*Id.*

We need not decide whether close scrutiny is required here, because even were we to closely scrutinize Eastman's articulated, non-discriminatory reason for not promoting Scott, we find that Eastman met its burden. Eastman gave a legitimate, non-discriminatory reason for not promoting Scott and put forth evidence showing that others were promoted ahead of her because they were more qualified, based on criteria which included both an objective as well as a subjective component.

### 3. Pretext

The district court concluded that Scott failed to show that Eastman's articulated, legitimate non-discriminatory reason was pretextual. To demonstrate pretext, a plaintiff is required to show either: "(1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the decision; or (3) that they were insufficient to motivate the employment decision." *Mitchell*, 389 F.3d at 184 (citing *Manzer*, 29 F.3d at 1084).

### a. Adverse Inference to Prove Pretext

Here, Scott argues that she is entitled to the benefit of an adverse inference. Scott alleges that Eastman illegally destroyed the primary documents from which the numeric scores on the spreadsheets produced by Eastman were generated. Scott maintains that, "Eastman destroyed

17

documents for the 1996-1998 selections to Team Manager, including candidates' Applications, Qualifying Tests, PCAs [Performance and Capability Assessments], and notes and raw score sheets for the Team Exercise and Interviews." (App. Br. 37.) Eastman admits that some of the underlying documents, from which the spreadsheets were created, are missing. The district court did not discuss Scott's argument for an adverse inference.

Scott argues that when an employer fails to maintain documents that it is required by law to maintain,[4] it should not benefit from its misconduct. Eastman argues that Scott is not entitled to an adverse inference as the spreadsheet scores (computed apparently from underlying documents, some of which are missing) can be explained by a managerial employee who can testify about the process and criteria reflecting the candidates' scores. The rules governing spoliation of evidence are governed by state law. In *McDaniel v. Transcender, LLC*, 119 F. App'x 774 (6th Cir. 2005), the

---

[4]Scott points to 29 C.F.R. § 1602.14 (2007), which states, in relevant part:

> Any personnel or employment record made or kept by an employer (including. . . application forms submitted by applicants and other records having to do with hiring, promotion, . . . and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. . . .Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under title VII or the ADA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected. . . .

29 C.F.R. § 1602.14.

plaintiff brought a Fair Labor Standards Act and an ADEA claim against his employer. In *McDaniel*, the court stated,

> Spoliation is the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for the destruction. [Citation omitted.] The rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law; in this case, the law of Tennessee. *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999).

*Id.* at 782. Under Tennessee law, which applies in this case as well, no adverse inference may arise absent evidence of bad faith.[5] Eastman maintains that Scott is not entitled to any adverse inference as she has not shown that the relevant documents were destroyed intentionally, in bad faith or for an improper purpose. Scott contends that an adverse inference is warranted under these facts because: (1) Eastman had complete control over the documents; (2) the documents were critical to proving Scott's claims; (3) litigation was reasonably foreseeable at the time the documents were destroyed; and (4) Eastman has not offered any explanation as to how the documents became unavailable.

However, apart from these general claims and arguments, Scott has failed to point to any record evidence, such as deposition testimony or an affidavit showing that the relevant documents were destroyed intentionally, in bad faith or for an improper purpose. Thus, we do not find Scott's argument for the benefit of an adverse inference to be meritorious.

### b. The EEOC Letter to Prove Pretext

---

[5] *See Tucker v. Gen. Motors Corp.*, 1991 U.S. App. LEXIS 23184, at *6 (6th Cir. Sept. 30, 1991) ("In general, a court may not allow an inference that a party destroyed evidence that is in its control, unless the party did so in bad faith."); *Eady v. Cigna Prop. & Cas. Cos.*, 1999 Tenn. LEXIS 687 (Tenn. Dec. 27, 1999) ("In regards [sic] to negative inferences, there was no proof offered at trial to show that the appellee purposefully destroyed the previous [ozone] testing records.")

19

Scott argues that the EEOC determination letter in her favor demonstrates a genuine dispute of material fact sufficient to defeat summary judgment. It is within the discretion of the court to accept the EEOC's final determination. *See Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997) ("This court has explicitly ruled that it is within the [sound] discretion [of the district court] whether . . . to accept the EEOC's final investigation report in evidence.") (brackets in original) (quotation omitted); *see also Heard v. Mueller Co.*, 464 F.2d 190, 194 (6th Cir. 1972).

Eastman argues that Scott was required to offer admissible evidence to show pretext, and that the EEOC determination letter was inadmissible; thus, the district court was correct in disregarding it. *Sherman v. Chrysler Corp.*, 47 F. App'x 716, 722 (6th Cir. 2002) ("An EEOC letter of violation is presumptively inadmissible because it suggests that preliminarily there is reason to believe that a violation has taken place and therefore results in unfair prejudice to defendant.") (internal quotations and citations omitted). However, in this case, the district court's opinion states that "for purposes of ruling on the motion for summary judgment, the court will presume that all evidence before it is admissible at trial." *Scott*, 2005 WL 1325014, at *3 n.1. The EEOC determination letter was clearly before the district court, though he did not discuss it.

Though there is no basis from which we can determine the weight, if any, that the district court gave the EEOC determination letter, we find that there is only information in regard to the 1996/97 Polymers Team Manager position which might arguably be considered in support of her claim and that information is already reflected in the record, as discussed below. The EEOC determination letter notes in regard to the 1996/97 Polymers Team Manager position that: (1) Scott received a higher score on the objective portions of the test than many of the male selectees; (2) yet, she received the lowest rating on the subjective portions of the test; and (3) the evidence in her

20

personnel file concerning her leadership skills, oral communication and customer service was inconsistent with the low ratings she received. (EEOC Determination Letter, J.A. 465.) However, the record upon which the EEOC relied, primarily the spreadsheets discussed below, does not support these findings. Furthermore, there is no substantive information in the EEOC determination letter showing that Eastman's articulated, non-discriminatory reasons for not promoting Scott to Team Manager in 1996/97 for the CM&S Division, 1997/98, or 1998/99 were pretextual. Therefore, we find that the EEOC determination letter does not preclude summary judgment in Eastman's favor on any of Scott's failure to promote to Team Manager claims.

### c. Eastman's Spreadsheets to Prove Pretext

Finally, Scott argues that Eastman's own spreadsheets provide evidence establishing that Eastman's articulated, non-discriminatory reason for not promoting her to Team Manager for either the Polymers Division or the CM&S Division in 1996/97 was pretextual. As discussed below, we disagree.

The Team Manager selections for the Polymers Division in 1996/97 were made using TMDS, a process that assessed candidates' scores on four different components: the objective PPT, and three subjective tests, the PCA, the Team Exercise ("TE"), and the Structured Interview ("SI"). Each component was evaluated by different managers. First, Eastman selected twenty-two finalists based on their scores on the PPT and the PCA.[6] The finalists then completed the TE and SI. Each of the four components was made up of several sub-components, which, in turn, each tested a different skill

---

[6]Scott admits that, during this stage, Eastman sometimes adds additional candidates as finalists, in the interest of diversity. Scott herself benefitted from this action in certain years. However, in the 1996/97 Polymers Division selection, her score was sufficiently high to earn her a place as a finalist.

set (*e.g.*, oral communication, managerial skills). Some of the skill sets were tested in multiple components (for example, oral communication was tested in both the PCA and SI). After scoring the four components, Eastman then performed two additional calculations, called Candidate Final Assessed Value and Strength Factors, which averaged the scores of the previously tested skill sets. After these additional calculations, the finalists received Total Points and were then ranked. From this intricate process, Eastman selected six Team Managers based on the candidates' final rankings.

Scott points to the fact that, according to the TMDS spreadsheets for the 1996/97 Polymers Division Team Manager selection process, she scored higher on the objective PPT than many men who were promoted. However, although Scott scored higher than four of the six selectees on the PPT, she ranked only ninth among the twenty-two finalists on this component. The skill sets that the PPT measured were Reading Comprehension, Graphic Arithmetic, and Following Policies and Procedures. While these skill sets are undoubtedly important, they represent only a few of the many skills evaluated by TMDS. Therefore, Scott's argument that her performance on this component should be representative of her performance on other components or in the overall selection process is not well-taken.

Scott argues that the overwhelmingly subjective nature of the test discriminated against female employees, but she has failed to present evidence suggesting any bias in the way the test was conducted. While Scott did poorly on two of the subjective components (scoring near the bottom on both the PCA and the SI), she did well on the other subjective component (scoring first among all the finalists in the TE).[7] As such, the finalists' scores on the subjective components do not

_____

[7]The EEOC determination letter refers to multiple objective components, and states that Scott performed well on all objective portions and performed poorly on all subjective portions. Thus, it appears that the EEOC characterized the TE, on which Scott ranked first, as objective.

indicate any manipulation on the part of Eastman to disfavor female candidates. Scott challenges the SI component in particular, arguing that her total score dropped significantly after this component. Again, we note that faring well or poorly on an individual component of the TMDS does not, in itself, indicate pretext. Furthermore, we note that when the raw scores for the four components are totaled, prior to the additional calculations, Scott had a "raw score" of 143, which was the ninth highest raw score. Scott scored lower than all of the six selectees, who had scores of 150, 150, 149, 147, 146, and 146. Consequently, the record indicates that Scott's score was simply not as high as those who were selected for promotion.

There is also no evidence that the additional calculations masked discrimination. For example, Scott points out that she received varying scores within a particular skill set; however, this is explained by the fact that different managers evaluated each component. For the same reason, the fact that her scores on particular subsets changed from year to year does not, without more, indicate pretext. In addition, Scott points out that some of the selectees' individual sub-component scores were lower than hers, but that after the "re-ranking" these candidates were selected instead of her. However, the court notes that TMDS (in particular, the additional calculations) was designed to identify the candidates' *average* score. None of these facts suggest that Eastman's selection process was a disguise for discrimination. Nor does the fact that the evaluators used a Special Selection form to do these calculations indicate pretext. In sum, Scott has not presented evidence to support her contention that she was better qualified than the people selected instead of her.

However, because the TE consisted of managers grading candidates' performances on group tasks, we find that this component is subjective.

23

With regard to the 1996/97 Team Manager selection for the CM&S Division, Plaintiff argues in a footnote that because the spreadsheets for the 1996/97 CM&S Team Manager selection were not in the record before the district court (due to an oversight by Defendant), summary judgment should be reversed and the case should be remanded on this claim. We disagree. The district court properly found that Plaintiff had failed to raise a genuine issue of material fact as to pretext based on the evidence before it, including the lack of adverse inference and the EEOC determination letter, as discussed above. Nothing in the spreadsheets would change that determination. The spreadsheets indicate that Scott did not score high enough on the first two components to earn a spot as a finalist. Her score of 49 was much lower than the scores of the eighteen finalists, who ranged from 56 to 62. (CM&S 1996 TMDS Process Data, App. Br., Addendum 6.) As such, Scott has failed to show that Eastman's process for selecting Team Managers for the Polymers and CM&S Divisions in 1996/97 was either not credible or motivated by discriminatory animus.

Therefore, we find that Scott has failed to put forth sufficient evidence to raise a genuine issue of material fact regarding whether Eastman's articulated, non-discriminatory reasons were pretextual for the 1996/97 Team Manager selections for the Polymers and CM&S Divisions. Accordingly, we **AFFIRM** the district court's finding that Scott failed to prove pretext on her claim for discriminatory failure to promote to Team Manager in 1996/97. Furthermore, we **AFFIRM** the district court's finding that Scott failed to prove pretext on her claim for discriminatory failure to promote to Team Manager in 1997/98 and 1998/99 because Scott has failed to come forward with competent evidence to support these claims.

### C. Scott's Retaliation Claims Decided on the Merits

24

The district court concluded in regard to Scott's retaliation claims growing out of her EEOC charge that Scott failed to produce evidence that Eastman decisionmakers knew that she filed an EEOC charge in 1997. *Scott*, 2005 WL 1325014, at *4. Scott argues the district court erred for two reasons. First, because the element of employer knowledge is not always an element for establishing a prima facie case of retaliation in the Sixth Circuit; sometimes it is part of the causal connection analysis. Second, Scott argues that she did produce evidence, either direct or circumstantial, from which a factfinder could infer that decisionmakers knew of her protected activities.

**1. The Element of Employer Knowledge**

Regarding the element of employer knowledge, the district court concluded,

The undisputed facts reflect that the only supervisory employee who had knowledge of the plaintiff's charge was Don Sanders, who testified that he told no one about the charge. No allegation is made that Mr. Sanders engaged in retaliatory conduct. Plaintiff has failed to establish that each of the decision-makers, as to each alleged adverse employment action that she contends was in retaliation for the filing of her charge, had knowledge of the charge. Because the plaintiff has failed to pinpoint facts sufficient to establish a material dispute as to whether the decision-makers had knowledge of her charge, she cannot prove a *prima facie* case of retaliation.

*Id.* at *4.

Scott argues that the district court prematurely terminated the analysis of her retaliation claim at the prima facie stage, when some decisions in this Circuit treat knowledge as a consideration in assessing a causal connection, and not as a stand-alone element. In the Sixth Circuit, many cases list "employer knowledge" as the second element of the prima facie case. *See Canitia v. Yellow Freight Sys.*, 903 F.2d 1064, 1066 (6th Cir. 1990) (listing the elements of a prima facie case for retaliation as "(1) that he engaged in an activity protected by Title VII; (2) that this exercise of his protected civil rights was known to defendant; (3) that defendant thereafter took an employment

25

action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action."). Yet in *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 796 (6th Cir. 2004) (en banc), the court did not list knowledge as an independent element of a prima facie case.

> [T]o support a claim for retaliation under Title VII a "plaintiff must establish: (1) that he engaged in activity protected by Title VII; (2) that he was the subject of adverse employment action; and (3) that there exists a casual [sic] link between his protected activity and the adverse action of his employer."

*Id.* (citing *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir. 1984)); *see also Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir. 1987) (same); *Harris v. Metro. Gov't of Nashville*, 80 F.3d 1107, 1118 (6th Cir. 1996) (noting that some cases subsume the element of employer knowledge into the causal connection analysis).

Regardless of whether employer knowledge is a stand-alone element of a prima facie case of retaliation, it is fairly clear from Sixth Circuit case law that employer knowledge of a plaintiff's protected activity is required. As Eastman asserts, even to prove a causal connection, Scott must establish that the decisionmakers involved in the promotions at issue had knowledge of the protected activity, as one cannot retaliate against an employee for engaging in protected activity unless he knew the employee had done so.

### 2. Direct Evidence of Employer Knowledge
### or Evidence From Which a Jury Could Infer Employer Knowledge

Knowledge may be inferred from evidence in the record. *See, e.g., Proffitt v. Metro. Gov't of Nashville & Davidson County*, 150 F. App'x 439, 442-43 (6th Cir. 2005) (stating that direct evidence of knowledge not required, and a plaintiff "may survive summary judgment by producing circumstantial evidence to establish this element of her claim"); *Kirkendoll v. McCullough*, 2006

U.S. Dist. LEXIS 1080, at \*29-30 (M.D. Tenn. Jan. 3, 2006) ("Plaintiff must present sufficient evidence from which a reasonable factfinder could infer that [decisionmakers] knew that Plaintiff previously had filed EEOC complaints . . . .")

Scott maintains that she pointed to evidence in the record showing either directly, or by inference, that there was at least a genuine issue of material fact as to whether decisionmakers at Eastman had knowledge of her protected activities. Scott has made a number of arguments and pointed to general policies which she maintains show that decisionmakers generally have knowledge of charges filed by employees. However, she still has not specified those persons responsible for not promoting her, nor has she established that those persons likely had knowledge of her protected activity.

Because Scott has not pointed to evidence in the record, either direct or circumstantial, from which a reasonable factfinder could conclude, or infer, that those at Eastman responsible for not promoting Scott knew of her protected activity, we **AFFIRM** the district court's conclusion that Scott failed to establish a prima facie case of retaliation.

### D. Plaintiff's Attempt to Amend her Complaint

On February 8, 2005, Scott filed a Motion for a Stay, requesting that the court stay the remaining deadlines in the Amended Scheduling Order to provide her with additional time in which to file a Motion to Amend the Complaint. On February 16, 2005, the Magistrate Judge denied that Motion, based primarily on the futility of Plaintiff's potential Motion to Amend and the fact that the deadline for amended pleadings had passed nine months earlier without any request to extend it. (Magistrate Judge's Order, J.A. 718.) The Magistrate Judge observed,

27

This action was filed in August of 2003. . . . While the EEOC charge made reference to the fact that the plaintiff was filing claims of sex discrimination on behalf of herself and all women similarly situated, no class action allegations appear in this action, other than a line in the complaint saying the plaintiff "reserves the right to seek class certification."

The original scheduling order required that "any motions to amend the pleadings or add new parties must be filed by May 28, 2004." The original trial date was January 18, 2005. This case has been continued twice by joint motions. The first of these motions was filed on July 12, 2004, well after the May 28th deadline. Neither of the orders granting these continuances extended the deadline for amending the pleadings or adding additional parties.

(*Id.* at 718-19.) The Magistrate Judge then concluded that there were no compelling circumstances justifying an amendment of the Complaint after the deadline.

Scott did not object to the Magistrate Judge's Order. Thereafter, on May 6, 2005, while Eastman's Motion for Summary Judgment was pending, Scott filed a Motion to Amend/Revise Complaint. (ECF No. 64, 65; J.A. 9.) Scott's Motion to Amend her Complaint was pending when the district court granted Eastman's Motion for Summary Judgment and dismissed Scott's claims, though in the district court's order granting summary judgment to Defendant, it stated: "nor has the plaintiff sought to amend her complaint to pursue a claim for disparate impact" when it ignored her statistical evidence. *Scott*, 2005 WL 1325014, at *3 n.2. The district court denied Scott's Motion to Amend as moot.

Scott argues that the district court erred by not permitting her to amend her complaint to allege a class action claim and a disparate impact claim. Scott asks this court to reverse and order the district court to permit her to amend her Complaint. Eastman argues that because Scott failed to object to the Magistrate Judge's Order, she has waived her right to assign error to that decision under Fed. R. Civ. P. 72.

Federal Rule of Civil Procedure 72(a) states, in relevant part,

28

Magistrate Judges; Pretrial Orders
> Nondispositive Matters. (a) A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter. Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made.

Fed. R. Civ. P. 72(a).

As Scott did not object, she has waived her right to assign error to the Magistrate Judge's order. Furthermore, decisions on motions to amend are reviewed for an abuse of discretion. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 982 (6th Cir. 1991). Scott has not shown an abuse of discretion; therefore, we **AFFIRM** the district court's determination on this issue.

**IV.**

In conclusion, for the foregoing reasons, we **AFFIRM** the district court's decision to dismiss Scott's failure to promote claims other than to Team Manager, with the exception that we find Scott's failure to promote by Special Selection to Welding Inspector in 1997 was not unexhausted, and, thus, we **REVERSE** the district court's decision and **REMAND** that claim for consideration on the merits. We **AFFIRM** the district court's dismissal of Scott's retaliation claims, other than those associated with the filing of her EEOC charge, for failure to exhaust her administrative remedies. Likewise, we **AFFIRM** the district court's dismissal of Scott's hostile environment claim for failure to exhaust.

We **AFFIRM** the district court's granting of summary judgment to Eastman on Scott's failure to promote claims for failure to prove pretext, and we **AFFIRM** the district court's granting

29

of summary judgment to Eastman regarding Scott's retaliation claims associated with the filing of her EEOC charge.  Finally, we **AFFIRM** the district court's determination that Scott not be permitted to amend her Complaint.

**BOGGS, Chief Judge, dissenting in part.** I would affirm the district court's grant of summary judgment for Eastman in its entirety. Therefore, though I agree with the bulk of the majority's opinion, I dissent from the majority's decision to remand one of Scott's failure-to-promote claims.

With respect to the Welding Inspector position, discussed in Part III.A.1 of the majority's opinion, I agree with the majority that Scott exhausted her administrative remedies and that the district court was wrong to conclude otherwise. I do not think, however, that this conclusion should be the end of our inquiry. An appellate court "may affirm on any grounds supported by the record even if different from the reasons of the district court." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). Here, applying the *McDonnell Douglas* burden-shifting framework, Eastman offered a clear non-discriminatory explanation for its decision not to promote Scott and Scott failed to raise a genuine issue of material fact that this explanation was a pretext for sex discrimination

Eastman's non-discriminatory explanation for not giving Scott the Welding Inspector job is simple: others were more qualified, and the majority opinion does not appear to contradict this. There is uncontroverted evidence that the man awarded the job, Michael Gass, had more experience (thirty years of service to Scott's twenty-one), had more relevant education (a two-year degree in welding technology rather than a welding inspector's certificate), and had been performing the Welding Inspector job on a temporary basis for four months. Scott did not present any competent evidence that she was actually more qualified or that Eastman's personnel decision was motivated by discriminatory animus. On that basis, I would affirm the district court's grant of summary judgment for Eastman.

31

The majority opinion now contemplates that perhaps the Welding Inspector job given to Gass was not actually the subject of the charge made by Scott. This argument does not seem to comport with the record. To the extent that Scott's charge did adequately raise this incident (and all three of us agree, contra to the district court, that it did), the charge was quite specific. At page 6 of the charge that she signed on September 22, 1997 (JA 414), Scott specifically states "*In June 1997*, a Welding Inspector job was filled with a male employee with less experience, qualifications and service." Faced with this allegation, Eastman promptly responded, in its motion for summary judgment, with an identification of such a position and the fact that it was filled by Michael Gass. During the EEOC process, Eastman also responded to this allegation in its position statement. Neither before the EEOC nor before the district court did Scott in any way contest specifically that this was the position involved. Only in the briefing to this court (appellant's brief at 14-15) does she raise specifically the promotion of Estepp, which she refers to as "in about 1997" and cites six scatter-shot record references, only two of which even mention Estepp.

In her documents below, one of only two comparable references to Estepp is in response to an interrogatory concerning evidence for her claims of disparate treatment, in which she names at least 72 persons (JA 1195-1200) who were involved in one activity or another that she references, at least five of whom are referred to as receiving positions as Welding Inspector, and in which Estepp is referenced without any date. (JA 1196). The other passing reference to Estepp is in the context of Scott's response to "undisputed fact No. 131" (JA 1746). After a series of responses concerning Gass and others, there is a statement of "additional material facts" saying Estepp was selected for Welding Inspector "in approximately 1997-98." I believe this wholly insufficient to put either Eastman or the district judge on notice that Estepp's promotion, rather than Gass's, is the event

32

complained of in the charge, as it must have been, in order to meet the exhaustion requirement that the panel has now agreed was met. In order to survive summary judgment, a plaintiff has some obligation to indicate with specificity if she disputes the interpretation that has been placed on an ambiguous complaint by the non-moving party. A complainant cannot simply "lie in the weeds" and contend later that the charge actually had to do with a completely separate promotion.

In any event, however, I would understand the court's remand to apply only to consideration of this allegation, that it was actually the Estepp promotion that was referenced in the EEOC charge and exhausted thereby. The EEOC determination letter itself makes no specific reference to this allegation, as it found all of the charges other than the team leader promotions to be unfounded or outside the period covered by the charge.