[Cite as *Dragmen v. Swagelok Co.*, 2014-Ohio-5345.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101584**

**SCOT DRAGMEN**

PLAINTIFF-APPELLANT

vs.

**SWAGELOK COMPANY**

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-812390

**BEFORE:** Blackmon, J., Boyle A.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** December 4, 2014

**ATTORNEYS FOR APPELLANT**

Brian D. Spitz
Fred M. Bean
The Spitz Law Firm, L.L.C.
4620 Richmond Road
Suite 290
Warrensville Heights, Ohio 44128


**ATTORNEYS FOR APPELLEE**

Amy L. Kullik
Jeffrey M. Embleton
Jaclyn C. Staple
Mansour, Gavin, Gerlack & Manos Co.
North Point Tower
1001 Lakeside Avenue
Suite 1400
Cleveland, Ohio 44114

PATRICIA ANN BLACKMON, J.:

**{¶1}** Appellant Scot Dragmen ("Dragmen") appeals the trial court's judgment granting summary judgment in favor of appellee Swagelok Company ("Swagelok") and assigns the following three errors for our review:

I. The trial court committed reversible error by wrongfully weighing the facts.

II. The trial court committed reversible error by determining that Dragmen did not satisfy his prima facie case for workers' compensation retaliation.

III. The trial court committed reversible error by determining that no genuine issue of material fact remained as to whether Swagelok's alleged reasons for terminating Dragmen were a pretext for worker's compensation retaliation.

**{¶2}** After reviewing the record and relevant law, we affirm the trial court's decision. The apposite facts follow.

**{¶3}** On August 16, 2013, Dragmen filed a complaint against Swagelok alleging he was terminated in retaliation for filing a workers' compensation claim and also alleged a claim for intentional infliction of emotional distress. Swagelok answered the complaint and filed a motion for summary judgment arguing Dragmen was terminated for committing two safety violations. Dragmen opposed the motion.

**{¶4}** Dragmen was an at-will employee with Swagelok from May 8, 2008 until his termination on May 9, 2013. His position changed through the years, but at the time he was terminated, Dragmen was a maintenance technician responsible for repairing machines.

**{¶5}** On March 14, 2013, Dragmen was injured after failing to follow Swagelok's Lockout/Tagout procedure before attempting to repair a machine. He failed to "de-energize the machine" and used a noninsulated tool to remove a fuse. He suffered an electrical arc burn to his hand. Dragmen admitted he should have followed procedure prior to repairing the machine.

**{¶6}** Before he left work to receive medical treatment, Swagelok's Environmental and Safety Coordinator, Micah Ellis, gave Dragmen information so that he could contact Swagelok's third-party workers' compensation claims administrator.

**{¶7}** Dragmen missed two days of work due to his injury. Dragmen did not tell anyone at Swagelok regarding his filing a claim for workers' compensation. Dragmen stated he was not demoted and his pay was not reduced after filing the claim. He also admitted that Swagelok did not dispute the workers' compensation claim, and his medical bills were paid.

**{¶8}** Dragmen was subsequently placed into the Associate Improvement Plan ("AIP") due to the safety violation. According to Dragmen's supervisor, Graig Michalski, the purpose of the AIP is to communicate a policy violation and to make sure the violation does not occur again. Michalski gave Dragmen a document regarding the AIP program so that he could be placed in the AIP. The document described the performance issue that resulted in the safety violation and noted that Dragmen had received training regarding the proper procedure for repairing the machine. The document stated that Dragmen's supervisor would review the procedures again with Dragmen and that he would be periodicially monitored while working on equipment. Lastly, the document stated as follows:

> If performance or behavior is not improved to an acceptable level, expectations
> are not met within the given time frame, or if repeat and/or additional violations
> occur, further disciplinary action, up to and including termination may occur.

**{¶9}** Dragmen was reluctant to sign the document, but eventually did so. According to Michalski's supervisor, Brian Milks, the employee's signature on the AIP document was voluntary, but even if he or she did not sign, the employee would be expected to comply with the

plan. The form had a blank space for the employee to provide any comments; however, Dragmen left it blank.

{¶10} On May 8, 2013, just three weeks after being placed into the AIP, Dragmen violated Swagelok's safety protocol. A co-employee was sitting at the workstation usually used by Dragmen. Dragmen told the employee to get out of "my chair." An argument ensued, and Dragmen pulled the chair out from underneath the co-employee, dumping him onto the floor.

{¶11} Another co-employee reported the incident to Michalski and Michalski reported the incident to Milks. Milks spoke to Dragmen and told him the employee could have hit his head or been injured in some other way. Dragmen replied that the employee was not injured, so it was not a "big deal." Jacki Thrasher of the human resources department was contacted. After speaking to witnesses and the individuals involved, Dragmen was terminated on May 9, 2013. Thrasher, Michalski, and Milks were the individuals who decided that Dragmen should be terminated. All three testified that they were not aware of Dragmen's workers' compensation claim when they decided to terminate him. According to Michalski, Dragmen was terminated because it was his second violation concerning safety within a short-time period.

{¶12} The trial court granted summary judgment in favor of Swagelok, stating in pertinent part:

> Defendant terminated plaintiff's employment following a second safety violation occurring three weeks after he was placed in an AIP for the first safety violation. The discipline and subsequent termination were not punitive actions taken in response to plaintiff's workers' compensation claim but in response to legitimate safety concerns about which plaintiff had been informed. Defendant did not object to the payment of plaintiff's workers' compensation claim. Plaintiff has failed to establish that there was a causal connection between his discharge and the workers' compensation claim.

Further, assuming arguendo that plaintiff has established a prima facie case, the record revealed no fact suggesting that the employer fired him for any other reason than his safety rule infractions.

{¶13} The trial court also granted judgment as to Dragmen's claim for intentional infliction of emotional distress. Dragmen only appeals the trial court's judgment as to his retaliation claim.

### Prima Facie Case

{¶14} We will address Dragmen's first and second assigned errors together. Dragmen contends the trial court erred by weighing the evidence and that there was a material issue of fact regarding whether his superiors knew he had filed a workers' compensation claim before he was terminated.

{¶15} We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays*, 140 Ohio App.3d 1, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶16} Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party. We conclude that Swagelok was entitled to summary judgment as a matter of law.

**{¶17}** R.C. 4123.90 provides in pertinent part: "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim * * * under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer."

**{¶18}** To establish a prima facie case for retaliatory discharge, an employee must prove; (1) that the employee was injured on the job; (2) that the employee filed a claim for workers' compensation benefits; and (3) that the employee was discharged in contravention of R.C. 4123.90. *Wilson v. Riverside Hosp.*, 18 Ohio St.3d 8, 479 N.E.2d 275 (1985), syllabus. Once the plaintiff establishes each element of the prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for terminating the employee. If the employer does so, the burden shifts back to the plaintiff to demonstrate that the reason offered for the termination is a pretext for retaliation. *Id.*

**{¶19}** It is undisputed that Dragmen meets the first two criteria. That is, he was injured on the job and filed a workers' compensation claim. The trial court concluded the third prong was not met because Dragmen provided no evidence that he was discharged for filing the claim. A court does not engage in the weighing of the evidence by finding material evidence to support the plaintiff's claim is lacking.

**{¶20}** There is no evidence that the Swagelok employees who made the decision to terminate Dragmen were aware that Dragmen had filed a workers' compensation claim. The relevant employees all testified in their depositions that they had no knowledge at the time of Dragmen's termination and that he had filed a workers' compensation claim. Dragmen admitted that he did not tell anyone besides Swagelok's third party workers' compensation administrator. As this court held in *Meyers v. Goodrich Corp.*, 8th Dist. Cuyahoga No. 95996, 2011-Ohio-3261,

"[t]o be liable for retaliating against an employee for taking part in a protected activity, the employer must have knowledge of it."    *Id.* at ¶ 22.

**{¶21}** Although there was no direct evidence that the supervisors were aware of the claim, Dragmen argues that it can be inferred they had knowledge of the claim by virtue of the fact that Dragmen was injured on the job.    However, in *Meyers*, we held that although circumstantial evidence can establish knowledge, "it is not enough for an employee to simply make general allegations that 'decisionmakers generally have knowledge of charges filed by employees.'" *Id.,* quoting *Scott v. Eastman Chem. Co.*, 275 Fed.Appx. 466, 482 (C.A. 6 2009).

**{¶22}** Dragmen relies on the First District's decision in *Kent v. Chester Labs, Inc.*, 144 Ohio App.3d 587, 761 N.E.2d 60 (1st Dist.2001), to show direct evidence that the employer was aware a claim is not necessary to overcome summary judgment.   In *Kent*, the plaintiff suffered a back injury and was terminated after filing a workers' compensation injury.   However, in that case, there was evidence that the plaintiff asked her supervisor if she could receive workers' compensation for the injury.   The employer told her several times that her injury was not work-related and advised her not to pursue a claim.   She subsequently filed a claim and was terminated for being dishonest about how she was injured. Plaintiff successfully avoided summary judgment even though there was no direct evidence that her employer knew a claim was filed.   However, in that case, there was evidence she was discouraged from filing a claim and terminated after she tried to do so creating a direct inference that she was terminated for filing the claim.

**{¶23}** Dragmen argues that certain actions taken by Swagelok likewise showed his supervisors had knowledge that he filed a workers' compensation claim. However, the evidence

does not center on the nature of Dragmen's injury like it did in *Kent* or involve evidence that the employer advised Dragmen not to file a workers' compensation claim.

{¶24} Dragmen claims that several days after filing his workers' compensation claim, he was placed in the company's AIP, which shows the hostile attitude of the company regarding his filing a workers' compensation claim. However, the evidence presented by Swagelok was that having to go through the AIP was standard practice after a safety violation. In fact, Michalski testified in his deposition that prior to Dragmen's placement in AIP, another employee was placed in AIP for failing to lockout a machine. That employee was not injured. "If the company policy is neutral in its application, the correlation between the timing of the discharge and the claim is not sufficient to meet the burden of proof." *Metheney v. Sajar Plastics, Inc.*, 69 Ohio App.3d 428, 432, 590 N.E.2d 1311 (11th Dist.1990). Dragmen failed to show that others who violated safety practices were not required to go through the program. Also, although he was approached about the AIP soon after he filed his workers' compensation claim, it was presented to him the first day he returned to work after the safety violation. Therefore, it was the first opportunity that Swagelok had to place him in the AIP.

{¶25} He also argues that the company's hostile attitude was shown by Milks requiring him to speak at the company's safety seminar. When he told Milks he did not want to speak, Dragmen stated Milks told him it "would be in his best interest to do so." Milks stated the purpose of having Dragmen give the presentation was to stress the importance of following safety protocols to the other employees, not to humiliate Dragmen. Milks also stated that the presentation complied with the AIP plan because it showed Dragmen was "engaging in improvements" regarding the mistake he made. Moreover, having Dragmen describe his

accident and stressing to his co-employees to follow the safety protocols to lockout the machines, is hardly an adverse action.

{¶26} Finally, he argues that although "horseplay" is defined as a minor infraction under Swagelok's progressive discipline policy, the incident where he pulled his co-employee's chair out from under him was treated as a major safety violation. Swagelok created the AIP to replace its progressive discipline policy; therefore, Dragmen is relying on an outdated policy. The AIP document put him on notice that if "additional violations occur" he could face termination. It did not require the second violation to be a "major violation." Milks also stated that there is a difference between "throwing paper airplanes" and putting another employee at risk by pulling a chair out from underneath him. The second could injure an employee.

{¶27} Our review of the evidence shows the trial court did not err by granting summary judgment in Swagelok's favor. Dragmen failed to show a causal connection between his filing the workers' compensation claim and his subsequent termination. This connection was crucial to his claim. "The scope of R.C. 4123.90 is narrow and protects only against adverse employment actions in direct response to the filing or pursuit of a workers' compensation claim." *Ayers v. Progressive RSC, Inc.*, 8th Dist. Cuyahoga No. 94523, 2010-Ohio-4687, ¶ 14. "R.C. 4123.90 does not prohibit a discharge for just and legitimate termination of employment. It does not suspend the rights of an employer, nor insulate an employee from an otherwise just and lawful discharge." *Markham v. Earle M. Jorgensen Co.*, 138 Ohio App.3d 484, 493, 741 N.E.2d 618 (8th Dist.2000), quoting *Brown v. Whirlpool Corp.*, 3d Dist. Marion No. 9-86-20, 1987 Ohio App. LEXIS 8534 (Sept. 1, 1987).

**{¶28}** Because Dragmen failed to sustain his burden to establish a prima facie case of retaliatory discharge, summary judgment against Dragmen on his wrongful discharge claim was proper.

**{¶29}** Given our disposition of the first and second assigned errors, Dragmen's third assigned error is moot because it concerns whether Swagelok's reasons for terminating him were pretextual. We do not get to this stage of the analysis because Dragmen failed to set forth a prima facie case of retaliation.

**{¶30}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

MARY J. BOYLE, A.J., and
EILEEN A. GALLAGHER, J., CONCUR