[Cite as *Glenn v. Hose Master, L.L.C.*, 2016-Ohio-1124.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 103160

---

**REGINALD GLENN**

PLAINTIFF-APPELLANT

vs.

**HOSE MASTER, L.L.C., ET AL.**

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-826941

**BEFORE:** Stewart, P.J., S. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** March 17, 2016

**ATTORNEYS FOR APPELLANT**

Brian D. Spitz
Sydney Strickland Saffold
Kelly L. Wilson
Spitz Law Firm
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122


**ATTORNEYS FOR APPELLEE**

Thomas R. Simmons
Christine Michelle Snyder
Tucker Ellis L.L.P.
950 Main Avenue, Suite 1100
Cleveland, OH 44113


MELODY J. STEWART, P.J.:

{¶1} Defendant-appellee Hose Master, L.L.C., discharged plaintiff-appellant Reginald Glenn, after learning that he made a racially offensive video on Hose Master premises and posted it to social media. Glenn filed this action against Hose Master and his supervisor, defendant-appellee Joe Gancos, claiming that he was actually discharged in retaliation for filing a workers' compensation claim after he suffered a minor injury to his finger. In addition to the retaliation claim, Glenn raised claims of wrongful discharge, discharge in violation of public policy, disability discrimination, and intentional infliction of emotional distress.

{¶2}  Hose Master filed a motion for summary judgment on all claims, its primary argument being that Glenn's discharge had nothing to do with the workers' compensation claim and that the video constituted a legitimate, non-discriminatory reason for the discharge. Glenn opposed summary judgment by arguing that Hose Master knew at the time of his discharge that he had recently suffered a back injury and acted preemptively to discharge him before he could file a workers' compensation claim for his back injury. He argued that Hose Master's reliance on the video was pretext for retaliation. The court granted summary judgment without opinion and this appeal followed.

## I. Workers' Compensation Retaliation

{¶3}  The first and second assignments of error collectively challenge the summary judgment entered on the workers' compensation retaliation claim. Glenn argues that the court erred by granting summary judgment because he established a prima facie case of retaliation, that Hose Master failed to offer a legitimate reason for his discharge, and that his termination was pretext for retaliation.

{¶4} R.C. 4123.90 states that no employer "shall discharge, demote, reassign, or take any punitive action against any employee" because the employee filed a workers' compensation claim.

{¶5} Workers' compensation retaliation claims, like employment discrimination claims, are difficult to prove because there is rarely direct evidence of an employer's intent to retaliate. *Olive v. Columbia/HCA Healthcare Corp.*, 8th Dist. Cuyahoga Nos. 75249 and 76349, 2000 Ohio App. LEXIS 914 (Mar. 9, 2000). This difficulty in proof has caused the courts to develop a burden-shifting framework that enables a plaintiff to show retaliation in the absence of direct evidence.

{¶6} The burden-shifting framework first requires an employee alleging a retaliatory discharge to state a prima facie case. An employee claiming workers' compensation retaliation states a prima facie case when the employee alleges suffering an injury on the job, filing a claim for workers' compensation, and discharge by the employer in contravention of R.C. 4123.90. *Wilson v. Riverside Hosp.*, 18 Ohio St.3d 8, 479 N.E.2d 275 (1985), syllabus.

{¶7} If the employee states a prima facie claim of retaliation, the burden shifts to the employer to articulate a legitimate nonretaliatory reason for its action. *Ayers v. Progressive RSC, Inc.*, 8th Dist. Cuyahoga No. 94523, 2010-Ohio-4687, ¶ 14. "'[T]he burden does not require the employer to prove the absence of a retaliatory discharge. It merely requires the employer to set forth a legitimate, nonretaliatory reason for the employee's discharge.'" *Lebron v. A&A Safety, Inc.*, 8th Dist. Cuyahoga No. 96976, 2012-Ohio-1637, ¶ 18, quoting *Kilbarger v. Anchor Hocking Glass Co.*, 120 Ohio App.3d 332, 338, 697 N.E.2d 1080 (5th Dist.1997).

{¶8} If the employer sets forth a legitimate, nonretaliatory reason for the employee's discharge, the employee must establish that the reason given by the employer is pretext for retaliation. *Dragmen v. Swagelok Co.*, 8th Dist. Cuyahoga No. 101584, 2014-Ohio-5345, ¶ 18.

{¶9} Although the burden of proof shifts back and forth between the employee and the employer, the ultimate burden remains at all times on the employee to prove that the employer had a retaliatory motive for the discharge. *Bertrand v. Collinwood Serv. Ctr.*, 8th Dist. Cuyahoga No. 58508, 1991 Ohio App. LEXIS 2278 (May 16, 1991).

{¶10} In its motion for summary judgment, Hose Master conceded that Glenn established the first two elements of a prima facie case of retaliatory discharge claim relating to the finger injury: that he suffered a work-related injury and filed a claim for workers' compensation. It argued, however, that Glenn had no evidence to show a causal connection between his filing for

workers' compensation and the discharge. In opposition to the motion for summary judgment, Glenn relied on "circumstantial evidence" in the form of statements by coworkers to the effect that Hose Master would fire an employee who made a workers' compensation claim, that Hose Master was aware that he had injured his back while working and would likely be filing a workers' compensation claim for that injury, and that Hose Master fabricated a basis for his discharge by claiming that the video violated an unwritten policy against cell phone use when other employees who had violated the policy were not terminated.

{¶11} The third element of a prima facie case of retaliatory discharge requires the claimant to demonstrate a causal connection between the filing of the workers' compensation claim and being terminated. *Dragmen,* 8th Dist. Cuyahoga No. 101584, 2014-Ohio-5345; *Harris v. OHNH EMP, LLC*, 2015-Ohio-3212, 37 N.E.3d 1256, ¶ 14 (9th Dist.). The causal connection requires evidence of a retaliatory state of mind of the employer. *Buehler v. AmPam Commercial Midwest*, 1st Dist. Hamilton No. C-060475, 2007-Ohio-4708, ¶ 24.

{¶12} Viewing the evidence most favorably to Glenn as the party opposing the motion for summary judgment, *see* Civ.R. 56(C), the record shows that he suffered an injury to his finger in late September 2013 or early October 2013. Characterizing the injury as a "small cut on my finger," Glenn did not seek medical treatment. A "lump" subsequently developed at the site of the cut, and on October 5, 2013, Glenn had the finger examined by an emergency room doctor. An x-ray failed to show the presence of any foreign body, so Glenn was told that the lump was scar tissue. He averred that "the hospital sent a staff member to speak with me and the staff member automatically filled out a report of the injury." That "report" was apparently an application for workers' compensation benefits. Glenn reported to work the next day and worked without incident until December 2, 2013.

{¶13} On December 2, 2013, Glenn experienced back pain while performing a work task. Thinking that he had kidney stones, he informed his supervisor about his pain and was told to leave work and see a doctor. A medical examination showed that Glenn suffered a back spasm. He returned to his duties the following day after presenting "medical documents" to his supervisor and the Hose Master human resources department. On December 5, 2013, Glenn reported to work complaining about back pain. He notified his supervisor and was told to leave his shift early to seek medical treatment. A new examination resulted in a diagnosis of a lumbar sprain. Glenn reported to work on December 6, 2013, and presented his supervisor with the new documentation. He resumed his work duties, but just hours into his shift, was terminated.

{¶14} Hose Master's reason for terminating Glenn's employment was because he posted to a social media network a racially and sexually offensive video made on the Hose Master shop floor. On the day before Glenn was terminated, Hose Master received an email from an individual unknown to the supervisory staff. The email stated, "I have some alarming information to share with you regarding one of your employees in the Cleveland location." That information consisted of picture and video files attached to the email. The recipient of the email was reluctant to open email attachments from an unknown source, so he forwarded the email up the management chain. The email eventually reached Hose Master's executive vice president. He opened the attachment and saw it contained a video that Glenn had posted to a social media account. The video contained dialog that was racially and sexually derogatory and laced with profanity.

{¶15} Although Glenn was not wearing his Hose Master uniform in the video nor were the words "Hose Master" shown on the video, other screen captures from Glenn's social media account showed photographs of him on the shop floor wearing the Hose Master uniform.

{¶16} The vice president showed the video to Glenn's supervisor and the plant manager. The supervisor then brought Glenn to the vice president's office. Glenn did not deny that he was depicted in the video nor did he deny that he made the video on the Hose Master shop floor. The executive vice president terminated Glenn's employment, an act for which he claimed sole responsibility. The supervisor confirmed that he had no input into the decision to discharge Glenn.

{¶17} None of this evidence establishes a causal connection between Glenn's termination and the workers' compensation claim that he filed two months earlier. In *Meyers v. Goodrich Corp.*, 8th Dist. Cuyahoga No. 95996, 2011-Ohio-3261, we held that "[t]o be liable for retaliating against an employee for taking part in a protected activity, the employer must have knowledge of it." *Id.* at ¶ 22. In support of its motion for summary judgment, Hose Master offered the affidavit of the vice president, who stated that at the time he made the decision to discharge Glenn, he "was also not aware that Mr. Glenn had a prior minor finger injury that was covered by workers' compensation." This statement was consistent with the vice president's deposition testimony that the company's human resources department handled any workers' compensation claims and that the vice president has "not had to deal with them." The vice president also stated in his affidavit that while he informed the Hose Master president of what the video showed, the decision to terminate Glenn's employment was his alone.

{¶18} Glenn offered no evidence in opposition to the motion for summary judgment to rebut the vice president's assertion that he was unaware at the time of Glenn's discharge that Glenn had previously filed a workers' compensation claim. Glenn did offer evidence that his immediate supervisor was aware of the workers' compensation claim for the finger, but that fact was immaterial because the supervisor testified that he had no discussions with the vice president

regarding the workers' compensation claim for the injury to Glenn's finger. If the supervisor did not inform that vice president of the workers' compensation claim for the finger and additionally had no input into the decision to discharge Glenn, his knowledge of Glenn's workers' compensation claim could not establish a causal connection between the claim and discharge.

{¶19} Glenn cites *Kent v. Chester Labs, Inc*., 144 Ohio App.3d 587, 761 N.E.2d 60 (1st Dist.2001), for the proposition that he need not offer direct proof that he was terminated in violation of R.C. 4123.90, but Glenn extends *Kent* far beyond its facts. *Kent* involved a worker who reported a work injury, only to have her supervisor tell her "I can tell you right now, this is not a Workmen's Comp claim." *Id*. at 589-590. The supervisor repeated that warning several times, saying "do not pursue it that way." *Id*. at 590. When the worker filed a workers' compensation claim for her injury, the employer discharged the worker for being dishonest about how she was injured. The First District Court of Appeals agreed that a claimant filing a workers' compensation retaliation claim need not offer "smoking gun" evidence to establish a prima facie case and could instead rely on circumstantial evidence. *Id*. at 592. The First District then reversed summary judgment for the employer on the workers' claim for workers' compensation retaliation because it found that the evidence, viewed most favorably to the worker, created a question of fact on the issue of retaliation. *Id*. at 593.

{¶20} The statement that circumstantial evidence may be used to prove a claim for workers' compensation retaliation is unremarkable. *See Olive,* 8th Dist. Cuyahoga Nos. 75249 and 76349, 2000 Ohio App. LEXIS 914 (Mar. 9, 2000). The worker in *Kent* could establish a triable issue of fact on whether her discharge was in retaliation for filing a workers' compensation claim because she had been warned not to file a claim and was discharged after she did. Glenn, however, filed his workers' compensation claim some two months before his

termination. During that two-month period, he worked without incident and offered no evidence to show any kind of retaliation during that period. And with Hose Master offering unrebutted evidence that the supervisor never spoke to the vice president about Glenn's workers' compensation claim for the finger, evidence that the supervisor knew of the workers' compensation claim proved nothing. *See Meyers,* 8th Dist. Cuyahoga No. 95996, 2011-Ohio-3261 ("it is not enough for an employee to simply make general allegations that 'decision makers generally have knowledge of charges filed by employees.'") *Id.* at ¶ 2, quoting *Scott v. Eastman Chem. Co.*, 275 Fed.Appx. 466, 482 (6th Cir.2009).

{¶21} In fact, the thrust of Glenn's opposition to summary judgment was that his second injury was the impetus for his termination. Glenn argued that his back injury loomed in Hose Master's mind as a reason for his discharge; that Hose Master, knowing that Glenn had previously filed a workers' compensation claim for his finger, was likely to fire him for a similar claim for his back injury. That argument fails because a potential workers' compensation claim for the injury to Glenn's back had nothing to do with his workers' compensation claim for the injury to the finger. And it bears emphasizing here that Glenn's complaint for workers' compensation retaliation was limited solely to the workers' compensation claim for his finger. *See* complaint, ¶ 43 ("Defendants terminated Glenn in retaliation for filing a Workers Compensation claim for his Finger Injury.") Glenn cannot prove a prima facie case of retaliation for filing the claim for injury to his finger with evidence that he suffered a different injury.

{¶22} Glenn also argued below that the video itself was not an adequate basis for his dismissal, nor would his dismissal have been warranted under Hose Master's work policy that prohibited employees from using their cell phones on the shop floor during work hours. Those

arguments are irrelevant to establish that Hose Master terminated Glenn for filing a workers' compensation claim for an injury to his finger. To establish a prima facie case of retaliation, Glenn had to show a causal connection between his discharge and the claim he filed two months previously. Arguments going to the existence of the video and a potential violation of a work rule relating to cell phones do not create a triable issue of fact on causation — they are arguments going to the third part of the burden-shifting test showing why Hose Master's decision to terminate Glenn was pretext for retaliation.

{¶23} Having viewed the evidence most favorably to Glenn, we agree that the court did not err by finding that he failed to show the existence of any genuine issue of material fact on the issue of whether his employment was terminated in retaliation for filing a workers' compensation claim. Reasonable minds could only conclude that Glenn's termination was unrelated to the workers' compensation claim he filed two months prior to his termination. With Glenn having failed to establish a prima facie case of retaliation, the court did not err by granting summary judgment to Hose Master on the retaliation claim.

{¶24} The same analysis applies to Glenn's workers' compensation retaliation claim against defendant Gancos, the supervisor.

{¶25} The supervisor testified that, apart from being shown the video in the presence of the vice president and the plant manager, he had no input into the decision to discharge Glenn. Glenn argues that the supervisor was aware of his back injury and that Glenn needed to seek medical treatment for it, but he fails to explain why the supervisor's knowledge of the back injury was relevant to establish that his employment was terminated for filing a previous workers' compensation claim for an injury to his finger.

**{¶26}** Glenn also argues that the supervisor testified at deposition that "in past practice he had been consulted about employees who committed serious violations of Hose Master policies prior to disciplinary action being taken," claiming that he is entitled to the inference that the supervisor participated in the decision to discharge him. This is a mischaracterization of the evidence: the supervisor testified that three previously discharged employees were being considered for rehire and that management asked him to give an opinion on "what type of employee" each worker had been. The supervisor made it clear that apart from that "feedback," he did not participate in the decision to rehire the employees. In any event, the supervisor's role in unrelated cases is not evidence of what he did in this case. The supervisor not only stated that he had no input into the decision to terminate Glenn's employment, the vice president corroborated the supervisor's statement by saying that he alone made the decision to discharge Glenn solely on the basis of the video, without any knowledge that Glenn had previously filed a workers' compensation claim. Glenn had no evidence to counter the supervisor's testimony, so he impermissibly relied on conjecture. *Carney v. Cleveland Hts. - Univ. Hts. City School Dist.*, 143 Ohio App.3d 415, 429, 758 N.E.2d 234 (8th Dist.2001).

**{¶27}** Regardless of his knowledge that Glenn had injured his finger some two months prior to his discharge, there was no evidence to show that the supervisor had anything to do with the decision to fire Glenn. The supervisor was not the individual liable for retaliating against Glenn, and the court properly granted summary judgment on that basis.

## II. Wrongful Discharge in Violation of Public Policy

**{¶28}** Glenn's third assignment of error complains that the court erred by granting summary judgment to Hose Master on his claim that his discharge violated public policy. That

claim was premised on the theory that his employment was terminated so that Hose Master could avoid being liable for a workers' compensation claim for Glenn's back injury.

{¶29} A claim that an employee has been wrongfully discharged in violation of public policy requires the plaintiff to prove (1) a clear public policy exists and is manifested in a state or federal constitution, in statute or administrative regulation, or in the common law (the clarity element), (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize public policy (the jeopardy element), (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element), and (4) the employer lacked an overriding legitimate business justification for the dismissal (the overriding-justification element). *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653 (1995).

{¶30} In *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, the syllabus states:

> 1. R.C. 4123.90 expresses a clear public policy prohibiting retaliatory employment action against injured employees.
>
> 2. Ohio recognizes a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after injury on the job but before the employee files a workers' compensation claim or institutes or pursues a workers' compensation proceeding.
>
> 3. To establish causation, a plaintiff who alleges wrongful discharge in violation of public policy as expressed in R.C. 4123.90 must prove that the adverse employment action was retaliatory, which requires proof of a nexus between the adverse employment action and the potential workers' compensation claim.
>
> 4. The remedies available for wrongful discharge in violation of the public policy against retaliatory employment actions as expressed in R.C. 4123.90 are limited to those listed in R.C. 4123.90.

**{¶31}** *Sutton* makes it clear that retaliatory causation is not presumed merely because an employee is discharged soon after suffering an injury — "a discharge could be for reasons other than those related to workers' compensation[.]" *Id.* at ¶ 10. For that reason, "the retaliatory nature of the discharge and its nexus with workers' compensation must be established by a preponderance of the evidence." *Id.* In addition, the claimant must prove that the employer "lacked an overriding business justification for firing him." *Id.*

**{¶32}** As with his retaliation claim, Glenn's public policy argument is based on speculation that he was discharged because he might file a workers' compensation claim for the back injury. Consistent with our disposition of the workers' compensation retaliation claim, we find that there was no evidence to show that the vice president — the person making the decision to discharge Glenn — knew that Glenn had previously filed a workers' compensation claim for his finger. While it is true that Glenn's supervisor had been aware of the workers' compensation claim filed for the finger injury, that knowledge could not be imputed to the vice president. *See Hudson v. S. Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir.1988) (affirming grant of summary judgment to the defendant on retaliatory discharge claim where there was uncontradicted evidence that the decision makers were unaware of the plaintiff's threat to file an EEOC charge); *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41-42 (5th Cir.1996) (upholding summary judgment in an ADEA claim because an immediate supervisor's allegedly discriminatory statements regarding an employee's age could not be imputed to the relevant decision maker's discharge of the employee). This is because the law requires the plaintiff to show *purposeful* retaliation; that is, a specific intent to discharge an employee for engaging in the protected act of filing a workers' compensation claim. If, at the time of employment termination, the person making the decision to terminate is unaware that the employee may be

filing a workers' compensation claim, the discharge cannot be retaliatory in nature. Glenn offered no evidence to show that Hose Master's vice president, as the sole decision maker in this case, knew that Glenn had injured his back, much less that he would be filing a workers' compensation claim. Glenn thus failed to establish the causation element of the tort of discharge in violation of public policy. The court did not err by granting summary on that claim.

### III. Disability Discrimination

**{¶33}** The fourth assignment of error complains that the court erred by granting summary judgment on Glenn's claim for disability discrimination. That claim alleged that a herniated disc in Glenn's spine constituted a physical impairment, that Hose Master knew of this impairment or perceived him as being disabled, and treated him differently than other similarly situated employees based on his disabling condition.

**{¶34}** We summarily reject this assignment of error for the reason that there is no evidence to show that Hose Master knew that Glenn had a herniated disc at the time it terminated his employment. As we have related in detail, the vice president had no knowledge that Glenn had been injured on the job at the time he made the decision to fire Glenn, so Glenn cannot make out a prima facie case of disability discrimination. *See Hedberg v. Indiana Bell Tel. Co., Inc.*, 47 F.3d 928, 932 (7th Cir.1995) ("it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because of' a disability unless it knows of the disability. If it does not know of the disability, the employer is firing the employee 'because of' some other reason.")

**{¶35}** Judgment affirmed.

It is ordered that appellees recover of said appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR